IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (WATERLOO) DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21-CR-2006-CJW |
| | ) | |
| vs. | ) | |
| | ) | |
| JUSTIN MICHAEL BUEHLER, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING BRIEF AND MOTION FOR
UPWARD DEPARTURE AND/OR VARIANCE**

The government submits the following brief in support of its sentencing memorandum and motion for upward departure.

**TABLE OF CONTENTS**

I. RELEVANT FACTUAL BACKGROUND ........................................................... 2

   A. Defendant's Offense Conduct ................................................................... 2

   B. Assault of C.S. ........................................................................................... 2

   C. Sexual Assaults of A.M.R. and A.R. ........................................................ 4

      1. Sexual Assault of A.M.R. ..................................................................... 4

      2. Sexual Assault of A.R. .......................................................................... 5

   D. Defendant's Criminal History ................................................................... 6

II. ANALYSIS ............................................................................................................ 7

   A. Upward Departure—Assault of C.S. ......................................................... 7

   B. Upward Departure—Sexual Assaults of A.M.R. and A.R. ...................... 8

   C. Alternatively, if the Court Does Not Depart Upward, the Court
      Should Vary Upward ............................................................................... 11

1. Nature and Circumstances of the Offense ........................................12
2. History and Characteristics of the Defendant................................12
3. The Need to Protect the Public from Future Crimes of the Defendant ....................................................................................12

III. CONCLUSION ................................................................................................12

## I. RELEVANT FACTUAL BACKGROUND

### A. Defendant's Offense Conduct

On January 7, 2019, an individual that later became a Confidential Source ("C.S."), provided information to agents regarding C.S.'s contact with defendant. (R. Doc. 143, at ¶7). C.S. stated that defendant regularly sold methamphetamine to other employees at Pries Manufacturing in Independence, Iowa. (R. Doc. 143, at ¶7). In January 2019, C.S. completed two controlled purchases of methamphetamine from the defendant. (R. Doc. 143, at ¶¶9 and 11).

On January 16, 2019, defendant distributed 3.39 grams of a mixture of methamphetamine to C.S. in exchange for $210. (R. Doc. 143, at ¶9). On January 24, 2019, defendant distributed 6.88 grams of actual (pure) methamphetamine to C.S. is exchange for $240. (R. Doc. 143, at ¶ 11).

### B. Assault of C.S.

On May 27, 2022, before defendant was transferred from the Linn County Correctional Center ("LCCC"), defendant had the following recorded conversation with an unknown woman:

Unknown woman: "Why, why would they do that?"

Defendant: "Well probably because, fucking, they picked up Ethan yesterday."

2

> Unknown woman: "So what's that got to do with anything? I don't understand."
>
> Defendant: "Yeah I don't either, we have no contact on each other because he's snitch'n on me, but regardless [unclear whether defendant says "I" or "they"] got people in different pods here, you know what I mean."
>
> Unknown woman: "Yeah."
>
> Defendant: "So yeah, I have no idea, but I don't know, my guess is that it's probably going to be like Iowa County in Marengo."

(R. Doc. 143, at ¶21).

On the same day, before his departure from the LCCC, defendant spoke to Johnny Blahnik Church in the presence of Gregory Sills. (R. Doc. 143, at ¶22). During the conversation, defendant told Church that C.S. had been arrested in Black Hawk County, Iowa, and would likely be housed in the LCCC. (R. Doc. 143, at ¶22). Defendant provided C.S.'s name, description, and told Church, "[i]f they bring him here…" (R. Doc. 143, at ¶22). Following that comment, Church assured defendant that he would take care of it. (R. Doc. 143, at ¶22). Defendant made it known to the entire cell block that C.S. cooperated with the government. (R. Doc. 143, at ¶22). Church told Sills that he intended to give C.S. a bloody nose and a black eye in order to make him appear "fucked up when he testified [against the defendant]." (R. Doc. 143, at ¶22).

Later that day, Church and Sills assaulted C.S. (R. Doc. 143, at ¶23). During the assault, C.S. was told not to wear a wire, that C.S. was a "rat," followed by an insinuation that he would be assaulted again. (R. Doc. 143, at ¶23).

The video footage showed Church throw C.S. in the dayroom against a small table. (Government's Exhibit 1). Church then grabbed C.S. and punched C.S. in

3

the face several times while Sills kicked C.S. in the head. (Government's Exhibit 1). Church then took a dinner tray and hit C.S. in the head two times and proceeded to throw C.S. into the small table. (Government's Exhibit 1). At that point, Church grabbed C.S. and pushed C.S. over to the door entrance. (Government's Exhibit 1). Due to C.S.'s injuries, he was transported to the hospital and treated for his injuries. (Government's Exhibits 1 and 2).

At trial, the Court found there was a conspiracy to assault C.S., defendant was a member of the conspiracy, and the statements made by Church and Sills were in furtherance of the conspiracy. (R. Doc. 143, at ¶22).

**C. Sexual Assaults of A.M.R. and A.R.**

    1.    Sexual Assault of A.M.R.

Discovery materials show that A.M.R. met defendant around Halloween in 2020 and was 21 years' old at the time. (R. Doc. 143, at ¶17). At approximately 4:00 a.m., defendant was riding his scooter when he spotted A.M.R. and invited her to his home. (R. Doc. 143, at ¶17). After they arrived at defendant's home, defendant offered A.M.R. a "drink." (R. Doc. 143, at ¶17). A.M.R. agreed to allow defendant to inject A.M.R. with methamphetamine and then felt "spun out," like she had taken more methamphetamine than she had ever consumed at one time. (R. Doc. 143, at ¶17). Defendant then attempted anal sex with A.M.R. for hours. (R. Doc. 143, at ¶17). During the sexual assault, defendant called A.M.R. names and when A.M.R. attempted to push defendant's hand a way from A.M.R.'s body, defendant struck A.M.R.'s hand and told her to stop. (R. Doc. 143, at ¶17). A.M.R.

said that this same manner of sexual contact happened for days, and defendant forced her to lie still during each attack. (R. Doc. 143, at ¶¶17 and 18).

During this time, defendant provided A.M.R. with methamphetamine to ensure that A.M.R. would stay high. (R. Doc. 143, at ¶18). On some occasions, A.M.R. felt so high that she had difficulty trying to operate a light switch. (R. Doc. 143, at ¶18). Although A.M.R. had used methamphetamine in the past, A.M.R. had never felt the level of impairment as A.M.R. experienced with defendant. (R. Doc. 143, at ¶18). A.M.R. experienced pain sitting down for multiple days and some bleeding from the area. (R. Doc. 143, at ¶17). Defendant also pinned down A.M.R.'s arms with his legs and attempted to insert his penis into her mouth. (R. Doc. 143, at ¶18).

      2.    Sexual Assault of A.R.

In 2014, A.R. met defendant while working at Kruse Farms. (R. Doc. 143, at ¶14). Between the winter of 2019 and 2020, A.R. began staying at defendant's house in Oelwein, Iowa. (R. Doc. 143, at ¶14). During one of the stays, A.R. agreed to let defendant inject A.R. with methamphetamine; however, A.R. stated the substance was not consistent with "normal" methamphetamine. (R. Doc. 143, at ¶15). A.R.'s perception became foggy and A.R. was unsure if A.R. had fallen asleep or was passed out. (R. Doc. 143, at ¶15). When A.R. woke up, A.R. was naked and alone in a cold garage attached to defendant's residence. (R. Doc. 143, at ¶15).

During one of the stays, defendant injected A.R. with methamphetamine, which caused A.R. to lose the ability to talk and control her body. (R. Doc. 143,

5

at ¶16). As A.R. was going in and out of consciousness, defendant spent "a couple of hours feeling [A.R.] up" and attempted to insert his penis into A.R.'s vagina and rectum. (R. Doc. 143, at ¶16). A.R. did not consent to sexual intercourse. (R. Doc. 143, at ¶16). Due to erectile dysfunction, defendant was not able to penetrate A.R. (R. Doc. 143, at ¶16).

### D. Defendant's Criminal History

Defendant has a significant criminal history, which started at age 17. (R. Doc. 143, at ¶38). Defendant has a subtotal criminal history score of 15. (R. Doc. 143, at ¶52).

Defendant's criminal history includes a conviction for Assault Domestic Abuse Causing Serious Injury. (R. Doc. 143, at ¶43). The underlying facts state that defendant fractured the victim's ribs, punched the victim in the left eye, which resulted in permanent disfigurement, and bit her right finger. (R. Doc. 143, at ¶43). In a second incident, the defendant punched the victim, burned the victim's left hand with a cigarette lighter, dragged her across the floor, and kicked her in the face. (R. Doc. 143, at ¶43). Defendant's violent conduct continued in the instant case.

Defendant also has possessed illegal controlled substances with the intent to deliver. In 2006, defendant received a conviction for Possession of Methamphetamine with Intent to Deliver, Possession of Marijuana with Intent to Deliver, and Drug Tax Stamp Violation. (R. Doc. 143, at ¶43). Defendant was sentenced to 10 years' imprisonment for the methamphetamine charge.

(R. Doc. 143, at ¶47). Defendant's record shows several convictions involving public intoxication and driving while intoxicated. (R. Doc. 143, at ¶¶49-52).

Based on his criminal history involving certain predicate offenses, defendant is a career offender under USSG §4B1.1(b). Defendant does not object to this classification or the predicate offenses.

## II. ANALYSIS

### A. Upward Departure—Assault of C.S.

Under USSG §5K2.2, an upward departure may be warranted "[i]f significant physical injury resulted." *Id*.

> The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate. If the injury is less serious or if the defendant (though criminally negligent) did not knowingly create the risk of harm, a less substantial departure would be indicated.

USSG §5K2.2.

The advisory guidelines do not define the term "significant physical injury." However, the advisory guidelines define two similar terms. The Guidelines define "serious bodily injury" as an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." USSG §1B1.1(1)(M). The Guidelines also define "bodily injury" as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." USSG §1B1.1(1)(B).

7

The government must prove, by a preponderance of evidence, that the facts warrant this upward departure. *United States v. Mosseau*, 517 F.3d 1044, 1049 (8th Cir. 2008).

Here, the evidence at trial, established that defendant's role in a conspiracy with Church and Sills resulted in the brutal assault of C.S. in the LCCC. (R. Doc. 143, at ¶22). C.S. was punched in the face several times, kicked in the head, thrown into a small table, and pushed over a door entrance. (Government's Exhibit 1). As a result of his injuries, C.S. was hospitalized. (Government's Exhibits 1 and 2). It is conceivable that the Court could find that C.S.'s injuries qualify as both "serious bodily injury" and "bodily injury" under the Guidelines.

The government notes that, as currently calculated in the final Presentence Investigation Report ("PSR"), defendant's advisory guideline range is 262-327 months' imprisonment. If the Court finds that it is the applicable advisory guideline range and does not vary upward, the government asks the Court to consider an upward variance as discussed below.

### B. Upward Departure—Sexual Assaults of A.M.R. and A.R.

Under USSG §2D1.1(e)(1), if a defendant, "committed, or attempt to commit, a sexual offense against another individual by distributing, with or without that individual's knowledge, a controlled substance to that individual, an adjustment under §3A1.1(b)(1) shall apply." Under USSG §3A1.1(b)(1), "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim," an enhancement to a defendant's base offense level would apply.

8

In applying USSG §2D1.1(e)(1), "if the defendant committed a sexual offense against more than one individual, an upward departure would be warranted." USSG §2D1.1(e)(1), Comment 22(B).  The Guidelines define "sexual offense" as a "'sexual act' or 'sexual contact' as those terms are defined in 18 U.S.C. §2246(2) and (3), respectively."  USSG §2D1.1(e)(1), Comment 22(A).

Under 18 U.S.C. §2246, "sexual act" and "sexual contact" are defined as follows:

> (2) the term "sexual act" means—
> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;
>
> (3) the term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. §2246(2) and (3).

A "vulnerable victim" means "a person (A) who is victim of the offense of conviction and any conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to criminal conduct." USSG §3A1.1, Application Note 2.

In *United States v. Plenty*, the Eighth Circuit Court of Appeals affirmed the district court's finding that the "vulnerable victim" enhancement applied because the victim was sleeping at the time of the instant offense. *United States v. Plenty*, 335 F.3d 732 (8th Cir. 2003). In the case, the government relied on *United States v. Wetchie* to support, which stated:

> As the district court found, the victim's being asleep "diminished [her] ability to resist the Defendant or cry out, [rendering her] essentially unable under any circumstances to resist his physical advance, unable to express any objection, unable to cry out, unable to do really anything until after the act was already underway or completed.

*United States v. Wetchie*, 207 F.3d 632, 634 (9th Cir. 2000).

The Court found that the unusual vulnerability addressed *Wetchie* was also present in the case. *Plenty* at 735. The Court further stated that the victim was asleep, did not have the ability to run away, move the location of the assault away form her children, or to fight back. *Id*.

Here, the government intends to prove, at sentencing, that defendant sexually assaulted both A.R.M. and A.R. The governments intends to present the testimony of A.M.R. and A.R. The government anticipates the testimony and A.M.R. and A.R. will show that defendant injected both individuals with methamphetamine and attempted sexual intercourse with them by force and without consent. The evidence will show that during the sexual assaults, A.M.R. was "spun out," kept high by the defendant, was physically incapacitated, and physically restrained by defendant. The evidence will also show that during the sexual assault, A.R. was going in and out of consciousness, lost the ability to talk or

10

control A.R.'s body, and was incapacitated. Consequently, both A.M.R. and A.R. were vulnerable victims.

The government notes that, as currently calculated in the PSR, defendant's advisory guideline range is 262-327 months' imprisonment. If the Court finds that it is the applicable advisory guideline range and does not vary upward, the government asks the Court to consider an upward variance as discussed below.

### C. Alternatively, if the Court Does Not Depart Upward, the Court Should Vary Upward

Pursuant to 18 U.S.C. § 3553, the Court should, after considering the "nature and circumstances of the offense and characteristics of the defendant," impose a sentence that is:

> sufficient, but not greater than necessary, to comply with . . . the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*See also United States v. Mangum*, 625 F.3d 466, 470 (8th Cir. 2010) ("Where a district court in imposing a sentence makes an individualized assessment based on the facts presented, addressing the defendant's proffered information in its consideration of the § 3553(a) factors, such sentence is not unreasonable.").

Should the Court decide against an upward departure , an upward variance is appropriate under § 3553(a). In this case, at least three of the § 3553(a) factors weigh heavily in favor of an above-guidelines sentence.

1. Nature and Circumstances of the Offense

The nature and circumstance of the offense are very troubling. Defendant engaged in the dealing of methamphetamine, conspired in the brutal assault of a government witness, and sexually assaulted multiple individuals.

2. History and Characteristics of the Defendant

Defendant's criminal history is consistent with his actions taken in the instant offense. Defendant continues to engage in criminal activity involving physical abuse, drug dealing, and the assault of women.

3. The Need to Protect the Public from Future Crimes of the Defendant

Defendant poses a significant danger to the community for several reasons. Defendant has shown that he has access to illegal controlled substances and is willing to distribute them at work and from his residence. Defendant has also shown a violent, physically and sexually abusive history with multiple individuals, preying upon individuals for his sexual gratification. In addition, defendant is willing to intimidate individuals to obstruct the criminal justice system for his own gain.

All of the factors, collectively and individually, warrant an upward variance.

## III. CONCLUSION

The government respectfully requests the Court depart upwardly and/or vary upwardly pursuant USSG §5K2.2 for the assault committed against C.S. and §2D.1.1, comment n.22 (B), for defendant's sexual assaults of A.M.R. and A.R. and sentence defendant to a term of imprisonment of 340 months.

Respectfully submitted,

TIMOTHY T. DUAX
United States Attorney

By, */s/ Jason Dorval Norwood*

JASON DORVAL NORWOOD
Assistant United States Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
319-363-6333
319-363-1990 (Fax)
Jason.Norwood@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2022, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the parties or attorneys of record.

UNITED STATES ATTORNEY

BY: */s/ RAL*